**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:16-CV-21273-RNS**

**GEORGE KIRSHAM HARRIS,**
**LUXON LUBORIEUX, ARTURO**
**LACAYO, and ERIC GAMARRA,**

**Plaintiffs,**

**v.**

**SWISSPORT SA, LLC f/k/a SERVISAIR LLC,**
**a Delaware limited liability company, SWISSPORT**
**CARGO SERVICES, L.P., a California limited**
**Partnership,**

**Defendants.**
**_________________________________________________/**

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY FINAL JUDGMENT**

Defendants, SWISSPORT SA, LLC, f/k/a SERVISAIR LLC ("Swissport SA") and SWISSPORT CARGO SERVICES, LP ("Swissport Cargo") (all Defendants collectively referred to as the "Defendants"), pursuant to Fed. R. Civ. P. 56 and Local Rule 7.1, hereby reply to Plaintiffs, LUXON LABORIEUX ("Laborieux"), ARTURO LACAYO ("Lacayo"), and ERIC GAMARRA ("Gamarra") (all Plaintiffs collectively referred to as the "Plaintiffs"), Response in Opposition (the "Response"), ECF No. 53, to Defendants' Motion for Summary Final Judgment (the "Motion"), ECF No. 46. As their Reply, Defendants state as follows:

In the instant action Laborieux and Lacayo, former Duty Managers for Swissport SA, and Gamarra, a former Cargo Supervisor for Swissport Cargo, claim Defendants improperly failed to pay them overtime compensation in violation of the Fair Labor Standards Act ("FLSA"). Defendants have denied liability, asserting, *inter alia*, that Plaintiffs were exempt from the overtime requirement of the FLSA because they were executive and/or administrative employees. In their Motion, Defendants demonstrated that Plaintiffs satisfied the four-prong test

for executive employees set forth by the U.S. Department of Labor ("DOL"). Specifically, Plaintiffs earned a salary above the applicable threshold; as Duty Managers, Plaintiffs Lacayo and Laborieux's primary duty was the management of fueling operations during their shifts and, as a Cargo Supervisor, Gamarra's primary duty was the management of cargo operations; they customarily and regularly directed the work of two or more full-time employees; and they made recommendations affecting the status of employees. Similarly, Defendants showed that Plaintiffs met the requirements of the DOL's test for the administrative exemption, in that Plaintiffs earned a salary above the applicable threshold, their primary duty was the performance of office or non-manual work directly related to the management or general business operations of Defendants' operations at Miami International Airport ("MIA") and included the exercise of discretion and independent judgment with respect to matters of significance.

Plaintiffs attempt to argue there are facts in dispute by making legal conclusions "supported" by mere conclusory allegations. The *facts* (as opposed to legal conclusions and conclusory allegations) to which they testified in their respective depositions contradict the statements now made by Plaintiffs' in their Response. Simply stating there are disputed facts does not create a genuine issue of material fact. Indeed, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotations omitted). Plaintiffs have failed to state a genuine issue of material fact, and the undisputed facts demonstrate as a matter of law that Defendants are not liable to Plaintiffs. Summary final judgment therefore should be awarded in Defendants' favor.

## I. Statement of Facts

As a preliminary matter, Plaintiffs' Response to Defendants' Statement of Material Facts ("PSOF"), ECF No. 54, exceeds the page limit and, in many places, fails to cite to specific record evidence, as required by Local Rule 56.1(a). Due to those deficiencies, the PSOF should be stricken. To the extent the Court declines to strike the PSOF, Defendants state as follows:

The PSOF is riddled with Plaintiffs' conclusory statements and legal conclusions (as opposed to facts from which such conclusions can be drawn). Notably, Plaintiffs do not appear to dispute *the facts* that are in Defendants' Statement of Material Facts ("DSOF"), ECF No. 45. Instead, Plaintiffs appear to dispute the legal conclusions supported by the facts. *See e.g.*, PSOF ¶ 4 (concluding Laborieux could not hire, fire, promote or change the status of employees, or make recommendations regarding the same, then acknowledging Laborieux's resume, but failing to recognize that Laborieux represented that he "[e]valuated employee performance annually," in his resume (ECF No. 39-1)); PSOF at ¶ 8 (concluding that Laborieux did not direct the work force, but failing to acknowledge that he, in his own words "command[ed] and deploy[ed] subordinate personnel," (ECF No. 39-1), made sure Fuelers were doing "what [they] need[] to be doing" while fueling, which included confirming employees were "following procedures" and "doing everything that they're supposed to" (Laborieux Dep., ECF No. 43-1, 53:11-22, 77:19-78:1), and telling employees what to do "[d]aily in their job" (*id.* at 55:22-56:14)). Plaintiffs' reliance on such inadmissible conclusory statements and legal conclusions is inappropriate, and cannot defeat Defendants' Motion. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) ("A nonmoving party, opposing a motion for summary judgment supported by affidavits cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). The evidence presented cannot consist of conclusory allegations or legal conclusions. *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)."). Plaintiffs, therefore, have failed to raise a disputed issue of material fact, and summary judgment should be granted in Defendants' favor.

## II. Executive Exemption

Plaintiffs do not dispute that their salaries meet the Executive exemption's threshold. *See* Response at p. 4. In claiming that they do not meet the exemption, Plaintiffs claim their primary duty was not management, and focus on managerial tasks they claim not to have done. They ignore, however, the managerial tasks they did perform.

In their effort to deny their managerial responsibilities,[1] Plaintiffs attempt to shift the focus to the number of tasks performed, rather than the quality of the tasks performed. *See e.g.*, Resp. at p. 7. The regulations, however, do not require that a certain percentage of work be spent on managerial tasks. *See* 29 C.F.R. § 541.700(b) ("Time alone . . . is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work."). Indeed, an employee can perform non-managerial tasks, and still be exempt. *See Diaz v. Team Oney, Inc.*, 291 F. App'x 947, 949 (11th Cir. 2008) (finding that, while plaintiff did perform non-exempt tasks, "his managerial duties—as the highest ranking employee on duty during the majority of his shifts, in which he supervised the drivers, counterpersons, and cooks, apportioned work, made deposits, filled out required forms, interviewed prospective employees, and engaged in local restaurant marketing—were significantly more important to the operation of the restaurant than his non-managerial tasks").

In claiming they primarily worked as laborers, Plaintiffs state: "To the extent [they] may have reported an incident, such as an injury or accident, this was not a daily occurrence or even, in the remotest, a typical day at Swissport." *See* Resp. at p. 9. In acknowledging this, Plaintiffs actually demonstrate that their primary duty was management. While Defendants agree that injuries and accidents are not daily occurrences at their locations, when atypical occurrences take place, Defendants relied upon Plaintiffs to respond and to act on the Company's behalf. *See id.*; (*see e.g.*, Laborieux Dep. 90:1-24; Lacayo Dep., ECF No. 44-1, 77:7-16). Moreover, Laborieux and Lacayo clearly thought that their primary duty was management, as Laborieux represented in his resume that he was "[r]esponsible for the supervision and operations for the [Fueling]

---

[1] Plaintiffs point to *Hernandez v. MB Florida Ltd. LP*, No. 11-24642-CIV, 2012 WL 3848556 (S.D. Fla. Sept. 5, 2012), to support their claims. *See* Resp. at p. 7. The Plaintiffs' reliance on *Hernandez* is misplaced. In *Hernandez*, the defendant appears to have relied heavily on statements made by its own witnesses, which conflicted with statements made by the plaintiff, creating a disputed issue. *See Hernandez*, 2012 WL 3848556, at *2. In the matter before this Court, Defendants have relied primarily on the representations made by Plaintiffs.

Division at [MIA]," (*see* ECF No. 39-1), and Lacayo stated his "[d]uties include[d] running an effective and safe operation" (*see* ECF No. 38-1). Importantly, neither Lacayo nor Laborieux dispute the representations made in their resumes. (*See generally* ECF 51-1, ECF 50-1.)

In claiming they did not direct the work of two or more employees, Plaintiffs state it would "render it difficult to simultaneously supervise two employees" if they spent a majority of their time performing manual labor. *See* Resp. at p. 10. This statement appears to suggest one cannot manage unless he physically stands there watching while two or more employees do their jobs. This nonsensical conclusion completely ignores statements made by Plaintiffs, as well as relevant case law. *See Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982) ("[O]ne can still be 'managing' if one is in charge, even while physically doing something else[.]"). For example, when describing his job duties at Swissport SA, Laborieux stated he "[c]ommand[ed] and deploy[ed] subordinate personnel" and "[s]upervised approximately one hundred" employees. (ECF No. 39-1.) Moreover, Laborieux specifically testified leads, dispatchers and supervisors reported to the Duty Manager, *see* Laborieux Dep. 44:11-45:5, and Lacayo testified that he oversaw, "[d]epending on the shift, 30, 38" employees, *see* Lacayo Dep. 42:8-21.

While Gamarra concludes he did not routinely supervise two or more employees, the shift reports he provided indicate otherwise. In a shift report dated February 8, 2015, he stated there was one employee on the cargo side, but that they were "only short staffed, because of the back log of breakdown," *see* Gamarra Dep., ECF No. 42-1, at Ex. 11, indicating this was not a normal occurrence. Indeed, in a shift report dated December 28, 2014, Gamarra stated there was "adequate staffing," and reported payroll exceptions for two employees, as well as the presence of a THS agent during the shift, *see id.* at Ex. 10, demonstrating there were *at least* three other employees there during the shift. Moreover, on the date Gamarra sent another employee home, he indicated the employee was not taking a direct order from a Lead, *see id.* at Ex. 14, again indicating there were at least two other employees on the shift with him.

Finally, Laborieux and Lacayo attempt to minimize their roles in the discipline of employees by claiming Nocen Cabrera drafted disciplinary forms issued to their employees.

This is untrue but, in any event, inapposite. In alleging their minimal roles in the disciplinary process, Plaintiffs fail to recognize that, as the ranking supervisors/managers on shift, higher management would not know what was occurring without Plaintiffs' reports. *See e.g.*, Cabrera Dep., ECF 36-1, 102:11-13. Indeed, Plaintiffs admit they provided Cabrera with the facts to put into the disciplinary report. *See* Lacayo Dep. 175:5-8; *see also* Resp. at p. 10-11 (stating Plaintiffs "informed the supervisor of an incident"). While Plaintiffs claim they "simply wrote the down" the narrative "prepared by the supervisor," *see* Resp. at p. 11, they ignore that they are the individuals who chose what information was passed along to other managers. Moreover, Laborieux specifically represented in his resume that he "[e]valuate[d] employee performance annually and continually monitor[ed] performance and [made] evaluations." (*See* ECF 39-1.) Similarly, Gamarra sent an employee home on at least one occasion, (*see* Gamarra Dep. Ex. 14), and admitted he "control[led] . . . staff assignments and compensation management," (*see* ECF No. 37-1).

Perhaps most indicative of their duties are Plaintiffs' own representations in their resumes. Notably, Plaintiffs Lacayo and Laborieux do not directly dispute the representations they made in their resumes. (*See generally*, ECF 51-1 and ECF 50-1 (failing to dispute the accuracy of the representations made in resumes).) Instead, they ask this Court to disregard ***their own statements*** to potential employers and, in at least Laborieux's case, directly to Swissport SA,[2] on resumes describing their job duties while working for Defendants. These statements

[2] When applying for the Duty Manager position, Laborieux provided a resume to Swissport SA in which he represented he was "in charge of supervising a group of employees" as a Lead. (Laborieux Dep. 26:6-27:19, Ex. 4.) Laborieux does not dispute the accuracy of the representations made in the resume he presented when applying for the Duty Manager position. (*Id.* at 27:8-19.)

were made by Plaintiffs, about the positions at issue in this case.[3] Plaintiffs provide no legitimate reason to disregard their admissions.

The facts are not disputed. The above-mentioned record evidence supports the fact that Plaintiffs' primary duty was management, that they regularly directed the work of two or more employees, and that they had the ability to affect changes in the status of employees. Plaintiffs, therefore, are Executives excepted from the FLSA's overtime provisions.

## III. Administrative Exemption

In attempting to rebut the application of the administrative exemption, Plaintiffs, again, make far-reaching legal conclusions without providing facts sufficient to support their arguments. Plaintiffs generally conclude they "were not primar[il]y engaged in office, non-manual work directly related to business operations." Resp. at p. 12. The second prong of the administrative exemption is met where Plaintiffs' ***primary duty*** (as opposed to being "primarily engaged") is office **or** non-manual work directly related to the management of general business operations of the employer or its customers. *See* 29 C.F.R. § 541.200(a).

Despite Plaintiffs' blanket statement that a "cursory review of the list set forth in 29 C.F.R. § 541.201(b) indicates that Plaintiffs were not involved in any of [the areas listed in § 541.201(b)] of the company," *see* Resp. at p. 13, the facts in the record support the conclusion that Defendants have demonstrated the applicability of the Administrative Exemption. *See* Motion at pp. 17-18 (providing facts with record citations to Plaintiffs' statements regarding the wide variety of non-manual duties performed by Plaintiffs).

Plaintiffs make a similarly unsubstantiated legal conclusion with respect to their discretion and independent judgment. While Plaintiffs attempt to minimize the amount of

[3] Plaintiffs inexplicably argue as if the statements written in their resumes were actually written by their respective employers, claiming that if "such designations were permitted to stand, then all employers could simply make such designation and essentially render the statute meaningless." *See* Resp. at p. 3. In making this argument, Plaintiffs ignore that they are the ones who made these representations (or "designations"), not their respective employers.

discretion and independent judgment they were afforded,[4] each represented they had the ability to make decisions requiring independent judgment and discretion. Indeed, Plaintiffs routinely demonstrated discretion and independent judgment in their positions. For example, Lacayo testified that, as a Duty Manager, he was responsible for "manag[ing] and direct[ing] staff in the effective execution of their duties and the assistance in solution of problems." (Lacayo Dep. 67:12-17.) He further testified that if he saw an employee doing something incorrectly, he would tell them what he thought he or she was doing wrong and attempt to correct the issue "[o]n the spot." (*Id.* at 90:2-24.) Laborieux similarly testified that if he saw something wrong during an audit, he would stop the Fueler from doing what he or she was doing. (Laborieux Dep. 174:12-15.) Laborieux further stated that customers called him with "big issues" for example, if equipment broke down or there was a flight delay. (*Id.* at 79:12-80:8.) Interestingly, Laborieux testified that "[r]ight there [he] would be able to resolve" the issue, and that those issues "can be resolved right there and then there wouldn't be no need to follow up." (*Id.*) Clearly, Plaintiffs did not speak to the Operations Manager about every important decision that had to be made.

While Plaintiffs attempt to diminish the importance of their interactions with customers, it is clear that Plaintiffs did not have a mere passing acquaintance with Defendants' clients, as Plaintiffs seem to suggest. *See* Resp. at p. 13. In fact, Duty Managers were responsible for all clients Swissport SA serviced. (*See* Laborieux Dep. 43:20-23;[5] Lacayo Dep. 37:14-22.) Moreover, Plaintiffs' testimony demonstrates they used discretion and independent judgment in

---

[4] In addressing this final prong of the administrative exemption, Plaintiffs address only their ability to discipline employees and fail to recognize facts supporting their ability to use independent judgment and discretion.

[5] Plaintiffs incorrectly accuse Defendants of "misciting" the record. *See* PSOF at ¶ 11. This claim is wholly inaccurate. *Compare* DSOF at ¶ 11 ("'The [D]uty [M]anagers were responsible for all clients' Swissport SA serviced (Laborieux Dep. 43:20-23) . . ."), *with* Laborieux Dep. 43:20-23 ("Q: Were you assigned to any particular client? A: No. The [D]uty [M]anagers were responsible for all the clients, all the customers that we service.").

handling customer issues. Indeed, Laborieux spent "all day" answering phone calls from clients.[6] Moreover, if he spoke with clients, Laborieux would find out what the issue was, "resolve the issues ***and then*** let Nocen Cabrera know" the customer concern and "***what the employee did wrong***." (Laborieux Dep. 58:1-18 (emphasis added).) Additionally, Lacayo directly communicated daily with a particular Swissport SA customer and, in responding to customers, for example, would direct a tanker to the customer to service the customer. (*See* Lacayo Dep. 92:23-93:9, 12-14.[7]) Similarly, Gamarra admitted he "control[ed] . . . staff assignments and compensation management," and "[m]aintain[ed] good relations with customer and airport authorities." (*See* ECF No. 37-1.) He further testified that, if there was an issue with an airline at night, the airline would talk to the Lead or Gamarra, who was the supervisor. (*See* Gamarra Dep. 166:15-167:3.) While he concludes he did not have discretion and independent judgment in performing his job, Gamarra testified that the general manager told him "[g]et the job done," but did not tell him how to get the job done. (*See id.* at 104:17-105:9.) Gamarra also testified that, for example, a Lead gave a direct order to another employee, and that he outranked Leads. (*Id.* at 159:7-18, Ex. 14.) Plaintiffs now inexplicably argue, without support, that Gamarra had no discretion in performing his job.

Plaintiffs submit broad, conclusory allegations regarding their supposed inability to exercise discretion and independent judgment with respect to matters of significance and, in

---

[6] Plaintiffs, again, incorrectly claim Defendants took Laborieux's statement out of context. *See* PSOF at ¶ 23 and *compare* DSOF at ¶ 23 ("Laborieux stated he spent all day answering phone calls. . .") *with* Laborieux Dep. 130:10-17 ("Q: And approximately how much of your day was spent answering phone calls? A: ***All day.*** Q: All day? A: ***Until the battery runs out.***") (emphasis added).

[7] Plaintiffs "dispute," without support, that Lacayo directed tankers. *See* PSOF ¶ 24. Once again, this "dispute" is unsubstantiated by the deposition testimony. (*See* Lacayo Dep. 93:12-14 (stating in the context of dealing with a customer issue: "Q: And what did you do? A: ***I will send a tanker***. We tried to send a tanker whenever – before the airline leaves.") (emphasis added).)

doing so, completely overlook existing record evidence, as demonstrated above. For these reasons, summary final judgment should be granted in Defendants' favor.

**CONCLUSION**

In their Response, Plaintiffs unsuccessfully attempt to diminish sworn testimony and prior admissions they made concerning their duties while employed by Defendants. Those prior statements clearly show that they met each prong of the DOL's executive and administrative tests. Having met those prongs, they are exempt from the overtime requirements of the FLSA, and Defendants' decision not to pay overtime was entirely lawful. Thus, for all of the reasons set forth above, and those set forth in Defendants' Motion, Defendants respectfully request the Court to grant their Motion for Summary Final Judgment.

Respectfully submitted,

*s/Patrick M. Muldowney*

Patrick M. Muldowney
Florida Bar No.: 0978396
E-mail: pmuldowney@bakerlaw.com
Meagan L. Martin
Florida Bar No.: 0089657
E-mail: mmartin@bakerlaw.com
**BAKER & HOSTETLER LLP**
Post Office Box 112
Orlando, Florida 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 18, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

Christopher F. Zacarias, Esquire
Law Offices of Christopher F. Zacarias, P.A.
5757 Blue Lagoon Drive, Suite 230
Miami, Florida 33126
E-Mail: czacarias@zacariaslaw.com

*s/Patrick M. Muldowney*
Patrick M. Muldowney