United States District Court
for the
Southern District of Florida

| | |
|---|---|
| George Kirsham Harris, Luxon Luborieux, Arturo Lacayo, and Eric Gamarra, Plaintiffs, <br><br> v. <br><br> Swissport SA, LLC, and Swissport Cargo Services, LP, Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 16-21273-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

**Order Granting Defendants' Motion for Summary Judgment**

Plaintiffs Luxon Laborieux,[1] Arturo Lacayo, and Eric Gamarra[2] all worked at the Miami International Airport. Laborieux and Lacayo were involved with fueling operations for Defendant Swissport SA; and Gamarra dealt with cargo operations for Defendant Swissport Cargo. The Plaintiffs claim the Defendants failed to properly compensate them under the Fair Labor Standards Act for all of the overtime hours they worked.

In their motion for summary judgment, the Defendants claim that none of the Plaintiffs qualify for overtime coverage because they are exempt employees under the FLSA. The Court finds the Defendants have demonstrated the absence of a genuine issue of material fact regarding the FLSA's executive exemption and the Plaintiffs have failed to make a showing sufficient to permit a jury to reasonably find on their behalf. The Court therefore **grants** the Defendants' motion (**ECF No. 46**.)

1. **Legal Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of

---

[1] Plaintiff Luxon Laborieux's last name is spelled in the complaint and listed on the coversheet as Luborieux. It appears, however, that his last name is actually Laborieux. (*E.g.*, Laborieux Dep. 8:2, ECF No. 43-1, 2.) The Court will therefore refer to him as Laborieux

[2] Plaintiff George Kirsham Harris was dismissed from this suit when the Court determined that he had abandoned his prosecution of the case. (ECF No. 31.)

fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990)

> **2. The Plaintiffs have not established a genuine issue for trial regarding the Plaintiffs' qualifications as exempt executives under the FLSA.**

Under the FLSA, an employer must compensate an employee who works more than forty hours a week at one and one-half times his regular rate. 29 U.S.C. § 207(a)(1). However, any worker who is employed as a "bona fide executive" is considered to be exempt from this requirement. 29 U.S.C. § 206(a)(1). The regulations relating to the FLSA set forth the criteria required to establish that an "employee [is] employed in a bona fide executive capacity":  (1) the employee must be compensated on a salary basis at a rate of not less than $455 per week; (2) the employee's primary duty must be management; (3) either (a) the employee must have hiring and firing authority; or (b) his suggestions and recommendations as to changes in the status of other employees must be "given particular weight"; and (4) the employee must "customarily and regularly" direct the work of two or more other employees. 29 C.F.R. § 541.100(a).

### A. Compensation

The parties acknowledge there is no dispute that the Plaintiffs all received at least $455 a week.

### B. Managerial Duties

The Department of Labor's regulations provide a long list of nonexclusive activities that it deems managerial in nature. 29 C.F.R. § 541.102. These tasks include: training employees; directing the work of employees; appraising employees' productivity and efficiency for the purpose recommending changes in status; disciplining employees; apportioning work among employees; determining the type of materials, supplies, machinery, equipment or tools to be used; controlling the flow and distribution of materials; providing for the safety and security of the employees or the property; and monitoring or implementing legal compliance measures. *Id.* The "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Diaz v. Team Oney, Inc.*, 291 Fed. App'x 947, 949 (11th Cir. 2008) (citing 29 C.F.R. § 541.700(a)). The Defendants have demonstrated the absence of a genuine issue of material fact by submitting evidence, affidavits, and depositions that demonstrate that the Plaintiffs all performed many of the managerial activities listed in the regulations and that these were in fact their primary duties.

Defendant Swissport SA provides fueling services to airlines at Miami International Airport. Both Laborieux and Lacayo were initially hired as fuelers but later accepted promotions to duty manager with Swissport SA. Regarding Laborieux, the Defendants have set forth evidence that shows that as duty manager he was responsible for:

- "the supervision and operations for the Fuel[]ing Division at the Miami International Airport" (Defs.' Stmt. of Mat. Facts ¶ 4, ECF No. 45, 2; Laborieux Resume, ECF No. 39-1);
- "supervis[ing] approximately one hundred employees" (*id.*);
- "command[ing] and deploy[ing] subordinate personnel, apparatus and equipment within the division" (*id.*);
- "actively work[ing] toward resolving personnel issues and challenges by understanding company policy and procedures related to the issues, and by utilizing good fact finding and supervisory techniques" (*id.*)
- "establishing and maintaining professional relationships with various department heads, division leaders and liaisons" (*id.*);

- "corporate compliance with all federal, state and local laws, policies and procedures with respect to fuel[]ing operations at the Miami International Airport" (*id.*; Laborieux Dep. 58:24–59:3, ECF No. 43-1);
- "evaluat[ing] employee performance annually and continually monitor[ing] performance and mak[ing] evaluations" (Defs.' SOF ¶ 4; Laborieux Resume);
- "ensur[ing] that departmental goals are met to track departmental progress" (*id.*);
- training Lacayo when Lacayo was promoted to duty manager (Defs.' SOF ¶ 7; Lacayo Dep. 135:7–10, ECF No. 44-1);
- providing operational reports at the end of every shift (Defs.' SOF ¶ 13; Laborieux Dep. at 68:17–69:3);
- conducting safety briefings and performing regular safety and quality assurance audits (Defs.' SOF ¶ 14; Laborieux Dep. 77:13–17);
- enforcing company and airline safety and health policies and procedures (Defs.' SOF ¶ 14; Laborieux Dep. 58:19–22); and
- fielding telephone calls from Swissport SA customers to resolve issues related to anything from malfunctioning equipment and gate mix-ups to delays and staffing problems to fuel spills (Defs.' SOF ¶¶ 11, 23; Laborieux Dep. 57:5–58:18, 128:10–21).

With respect to Lacayo, the evidence presented by the Defendants establishes that he handled many of the same duties. Specifically, Lacayo was responsible for:

- "running an effective and safe operation" (Defs.' SOF ¶ 29; Lacayo Resume, ECF No. 38-1);
- "supervision of crews" (*id.*);
- inspecting fueling equipment to ensure that it is safe to use (*id.*);
- reporting problems with equipment (*id.*; Defs.' SOF ¶ 25; Lacayo Dep. 110:7–9);
- complying with "rules and regulations of the federal, state, and local government" (Defs.' SOF ¶ 29; Lacayo Resume, ECF No. 38-1);
- overseeing thirty to thirty-eight employees per shift (Defs.' SOF ¶ 6; Lacayo Dep. 42:8–16);
- "manag[ing] and direct[ing] staff in the effective execution of their duties and the assistance in solution of problems" (Defs.' SOF ¶ 10; Lacayo Dep. 67:12–17);
- "enforc[ing] company and airline safety, health policies and procedures" (Defs.' SOF ¶ 10; Lacayo Dep. 67:19–21);

- ensuring compliance with airport authority rules and U.S. Customs (Defs.' SOF ¶ 10; Lacayo Dep. 67:22–68:1);
- "[a]ctively ensur[ing] that proper fuel inventories were controlled and that [certain] standards were met" (Defs.' SOF ¶ 10; Lacayo Dep. 68:3–7);
- "ensur[ing] the safe and efficient use of fueling equipment, including computer systems and radios" and maintaining same (Defs.' SOF ¶ 10; Lacayo Dep. 68:9–13);
- ensuring the daily completion of operational reports, including gathering information from other duty managers regarding late flights, scheduling, staffing levels, and equipment availability (Defs.' SOF ¶¶ 10, 25; Lacayo Dep. 68:24–69:3, 105:7–17, 107:5–14);
- timely completing company accident reports (Defs.' SOF ¶ 10; Lacayo Dep. 69:5–8);
- auditing fuelers which entails checking for proper connections, making sure fuelers were wearing safety equipment and ensuring they were doing their paperwork correctly (Defs.' SOF ¶ 10; Lacayo Dep. 69:22–70:2);
- notifying the company when a fueler failed to appear for a shift (Defs.' SOF ¶ 10; Lacayo Dep. 70:21–24);
- counseling fuelers when they missed shifts or were late (Defs.' SOF ¶ 10; Lacayo Dep. 70:20–23);
- managing staff (Defs.' SOF ¶ 10; Lacayo Dep. 72:22–25);
- liaising with the fire department in the event of a fuel spill or improper grounding (Defs.' SOF ¶ 10; Lacayo Dep. 75:16–76:20); and
- "follow[ing] up on all customer requests and establish[ing] ongoing . . . communication with them" (Defs.' SOF ¶¶ 10, 24, 25; Lacayo Dep. 78:6–8, 92:23–93:14, 108:11–19, 158:25 – 159:5).

Swissport SA also presented evidence that its duty managers, including Laborieux and Lacayo, generally:

- spent about ninety percent of their time troubleshooting (Defs.' SOF ¶ 7; Lacayo Dep. 122:5–7);
- were responsible for "direct[ing] the work force" (SOF ¶ 8; N. Cabrera Dep. 53:5);
- were accountable for "the day to day safe and efficient operation of plane fueling activities" (Defs.' SOF ¶ 10; Lacayo Dep. 67:2–6);
- were responsible for "ensuring that customer and contractual services were met" (Defs.' SOF ¶ 10; Lacayo Dep. 67:8–11);

- were required to notify Swissport SA of any client issues and how they arose (Defs.' SOF ¶ 13; Lacayo Dep. 63:3–6);
- had to ensure adequate staffing levels and equipment coverage (Defs.' SOF ¶ 20; N. Cabrera Dep. 29:11–24);
- were expected to make sure flights got assigned (Defs.' SOF ¶ 25; Laborieux Dep. 85:22–86:5);
- were responsible for resolving client issues (SOF ¶ 11; Laborieux. Dep. 57:5–25);
- were responsible for making sure that overtime amounts did not go over budget (Defs.' SOF ¶ 27; N. Cabrera Dep. 83:1–14);
- could approve overtime without authorization (Defs.' SOF ¶ 27; N. Cabrera Dep. 70:24 – 71:13); and
- verified and signed the workers' checklist where employees kept track of their shift hours (Defs.' SOF ¶ 28; Lacayo Dep.84:25–85:7).

Defendant Swissport Cargo provides cargo- and mail-handling services to airlines at Miami International Airport. Plaintiff Gamarra was a cargo supervisor the entire time he worked for Swissport Cargo. As the cargo supervisor working the night shift, Gamarra was the highest ranking employee on site. (Defs.' SOF ¶ 32; Gamarra Dep. 196:9–17.) Gamarra was responsible for:

- completing a daily shift report for the general manager in which he had to relay what had happened on his shift and advise as to any faulty equipment or understaffing issues (Defs.' SOF ¶ 33; Gamarra Dep. 68:8–69:12);
- reporting any irregularities, service failures, incidents, and accidents that occurred during his shift (Defs.' SOF ¶ 33; Gamarra Dep. 102:25–103:7);
- communicating with company customers (Defs.' SOF ¶ 34; Gamarra Dep. 100:25–101:3);
- approving overtime (Email Ex. 12, ECF No. 42-1, 85);
- initiating discipline with respect to the employees who reported to him for violation of Swissport Cargo's policies (J. Cabrera Decl. ¶ 7; ECF No. 35-1, 2);
- sending employees home if necessary and assigning overtime when needed (J. Cabrera Decl. ¶ 7; ECF No. 35-1, 2);
- "controlling of staff assignments" and managing compensation (Defs.' SOF ¶ 30; Gamarra Resume, ECF No. 37-1);
- updating "customer manuals, training and documentation" (*id.*);
- "maintain[ing] safety, security and quality standards" (*id.*);

- "[m]aintain[ing] good relations with [company] customer[s] and airport authorities" (*id.*)

The factors considered when determining an employee's primary duty include: (1) "the relative importance of the exempt duties as compared with other types of duties;" (2) "the amount of time spent performing exempt work;" (3) "the employee's relative freedom from direct supervision;" and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a).

In the face of the evidence submitted by the Defendants, the Plaintiffs respond by listing a number of managerial responsibilities the Plaintiffs did *not* have. They also focus on managerial responsibilities that other Swissport employees had. These issues are neither here nor there as they do not help in evaluating the tasks the Plaintiffs themselves actually did perform. Additionally, the Plaintiffs appear to imply that Laborieux and Lacayo's resumes are inaccurate. (Pls.' SOF ¶¶ 4, 29.) However, they cite no particular part of the record to support this claim as required by Federal Rule of Civil Procedure 56. Instead, they merely say, in conclusory fashion, that what is conveyed in their resumes "is not reflective of the actual work" that the Plaintiffs performed. (*Id.*) At the same time, they readily acknowledge that the resumes "speak for [them]sel[ves]." (*Id.*) No specific objections appear to have been raised with respect to Gamarra's resume. The Court thus finds that the information conveyed in the Plaintiffs' three resumes is undisputed.

Regarding the relative importance of the exempt duties that the Plaintiffs performed as compared with other types of duties and the amount of time spent performing exempt work, the Plaintiffs do not directly dispute the majority of the numerous above-listed managerial undertakings. Rather they recharacterize these activities in light of additional facts. The Plaintiffs insist that much of their work involved doing physical and manual tasks as opposed to office tasks. But in making this allegation, the Plaintiffs rely on affidavit testimony from both Lacayo and Laborieux wherein they both acknowledge engaging in manual fueling activities *while simultaneously* participating in managerial-type tasks. (Laborieux Aff. ¶ 20, ECF No. 50-1, 4; Lacayo Aff. ¶ 21, ECF No. 51-1, 4.) While Gamarra's affidavit testimony does not make this same acknowledgment, his only direct quarrel with the above-listed facts is that he could not actually approve overtime. While this appears to be more of a disagreement about what it means to "approve" overtime, even if the Court finds the overtime issue disputed, which it does for present purposes, this does not diminish the overwhelmingly managerial nature of the tasks listed above.

Notably, none of the Plaintiffs contend that their non-managerial activities prevented them from completing their managerial responsibilities. This differentiates this case from that of *Barreto v. Davie Marketplace, LLC*, cited by the Plaintiffs. 331 F. App'x 672 (11th Cir. 2009). In that case the Eleventh Circuit found compelling that, because of management's understaffing of the plaintiff's department, the plaintiff there had no time to fulfill his few, "nominally given," managerial responsibilities. *Id.* at 675. Here, there is no such allegation.

Thus, even viewing the evidence presented in the light most favorable to the Plaintiff—that is, that the Plaintiffs performed manual labor in addition to the mostly unconverted list of managerial tasks—the Court does not conclude that a reasonable jury could find in the Plaintiffs' favor as to the importance of the exempt duties as compared to the other duties. There is no genuine issue of material fact that the Plaintiffs' managerial tasks were significantly more important to the operation of the Swissport companies than their non-managerial tasks. This is so even accepting the amount of time the Plaintiffs claim to have spent on these additional, non-managerial activities. *See, e.g.*, *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1273–74 (S.D. Fla. 2004) (Ryskamp, J.) (finding store manager exempt from FLSA overtime even though he spent ninety-five percent of his time performing non-exempt tasks and citing several cases with similar holdings), *aff'd*, 140 F. App'x 168 (11th Cir. 2005); *see also Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982) ("one can still be 'managing' if one is in charge, even while physically doing something else").

Further, the Plaintiffs do not dispute that the Plaintiffs' salaries significantly exceeded the wages paid to other employees for performing the nonexempt work they claim to have performed. (Defs.' Mot. at 14.) Lacayo and Laborieux, as duty managers, and Gamarra, as a cargo supervisor, all earned in excess of $40,000 per year. (Defs.' SOF ¶¶ 3, 6, 31.) By comparison, fuelers earned only $14.27 per hour and cargo leads only $15.10 per hour. (*Id.* at ¶¶ 5, 32.) Nor does the fact that the Plaintiffs themselves had to report to a supervisor diminish the managerial nature of the many uncontested tasks listed above. *See Moore*, 352 F. Supp. 2d 1278 (finding store manager exempt from FLSA overtime even though he worked under the close supervision of his manager). Taken together, the Defendants have carried their burden of establishing that the Plaintiffs' primary duties were managerial and the Plaintiffs have failed to come forward with sufficient evidence based upon which a reasonable juror could find in their favor.

### C. Status of Other Employees

The next criterion requires that either (a) the employee must have hiring and firing authority; or (b) his suggestions and recommendations as to changes in the status of other employees must be "given particular weight." 29 C.F.R. § 541.100(a). It is undisputed that the Plaintiffs did not have hiring and firing authority. The record is clear, however, that the Plaintiffs had the authority to initiate the disciplinary process against hourly employees and that when they exercised this authority, their reports and submissions were given particular weight.

For example, Laborieux himself testified that, as duty manager, he would inform his manager when an employee did something wrong. (Defs.' SOF ¶ 11; Laborieux Dep. 58:8–11.) He also testified that if he recognized that a fueler was doing something wrong, he would stop them. (Defs.' SOF ¶ 16; Laborieux Dep. 174:12–15.) When there was a spill, Laborieux was responsible for gathering information and writing up the fueler's involvement in an incident report. (Defs.' SOF ¶ 18; Laborieux Dep. 89:3–14.) Both Laborieux and Lacayo admitted during their depositions that duty managers were responsible for disciplining employees. (Defs.' SOF ¶ 19; *e.g.* Laborieux Dep. 93:20–94:1; Lacayo Dep. 78:14–79:9.) Their supervisor testified that the duty managers were responsible for disciplining employees because they are the ones actually on site, witnessing the violation. (Defs.' SOF ¶ 19; N. Cabrera Dep. 101:25–102:13.) These disciplinary actions would then be used to determine whether or not to terminate an employee. (Defs.' SOF ¶ 19; N. Cabrera Dep. 102:14–17.) Moreover, Laborieux's own resume recites that he personally "[e]valuate[d] employee performance." (Defs.' SOF ¶ 4; Laborieux's Resume, ECF No. 39-1.) Similarly, Lacayo testified that he was responsible for counseling fuelers when they missed shifts or were late. (Defs.' SOF ¶ 10; Lacayo Dep. 70:20–23.) Lacayo further explained that his supervisor would fill out the employee-discipline forms "based on what [the duty manager] told him." (Defs.' SOF ¶ 19; Lacayo Dep. 175:1–14.) Laborieux's supervisor testified that Laborieux would discipline employees all the way through to suspension. (Defs.' SOF ¶ 19; N. Cabrera Dep. 43:9–12.) And Laborieux himself acknowledged, without reservation, that once the duty managers informed the supervisor of an issue, the supervisor "would give [them] the instructions to discipline the employee." (Defs.' SOF ¶ 19; Laborieux Dep. 93:20–24.)

Similarly, Gamarra admitted he was responsible for reporting any incidents or accidents that occurred during his shift and that he would inform the operations manager of any disciplinary issues. (Defs.' and Pls.' SOF ¶ 33; Gamarra Dep. 114:22–115:1.) He also had the authority to send home an

employee who complained of dizziness. (Defs.' SOF ¶ 33; Ex. 14, Gamarra Dep., ECF No. 42-1, 87.) In his resume, Gamarra listed "controlling of staff assignments and compensation management" as part of his responsibilities as cargo supervisor. Furthermore, his supervisor also testified that Gamarra had "the authority to initiate discipline with respect to the employees who reported to him for violation of Swissport Cargo's policies." (J. Cabrera Decl. ¶ 7; ECF No. 35-1, 2.) That he did not have unilateral authority to take *final* disciplinary action himself, as he testified, does not undermine the fact that his initiation of disciplinary action was given particular weight. Further, in the Plaintiffs' statement of facts, no citation is provided to support Gamarra's claim that he "did not discipline the employees himself." (Pls.' SOF ¶ 33.) This factually unsupported allegation is therefore, in and of itself, insufficient to raise a genuine issue of material fact.

Under the regulations, "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. § 541.105; *see Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 886 (8th Cir. 2016) (finding probative that the plaintiffs testified that when they recommended discipline, management followed the recommendations most of the time). Thus the Plaintiffs' argument that they did not have the final say on what actions were ultimately taken against the disciplined employee is unavailing. Additionally, the Plaintiffs failed to cite to a single instance of a supervisor ever disregarding their reporting of an employee's wrongdoing.

The Defendants have thus carried their burden of establishing that the Plaintiffs' suggestions or recommendations carried particular weight as to changes in hourly employees' statuses. In response, the Plaintiffs have failed to come forward with sufficient evidence based upon which a reasonable juror could find in their favor.

### D. Direction of Other Employees

A bona fide executive must customarily and regularly direct the work of two or more other employees. 29 C.F.R. § 541.100(a)(3). "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. So long as the direction occurs on a normal basis and recurrently every workweek, it is considered "customarily and regularly" performed. *Id.* Direction that occurs only on an "isolated or one-time" basis does not qualify. *Id.*

Lacayo and Laborieux, as duty managers, had many employees directly reporting to them during their shifts: twenty fuelers; one lead fueler; and one dispatcher. (Defs.' SOF ¶ 12.) Laborieux's own resume recounts that he "[s]upervise[d] approximately one hundred (100) employees" and that he "[c]ommand[ed] and deploy[ed] subordinate personnel." (Defs.' SOF ¶ 4; Laborieux's Resume, ECF No. 39-1.) Similarly, Lacayo's resume lists "supervision of crews" as one of his duties as duty manager. (Lacayo Resume, ECF No. 38-1.) Lacayo also testified that on a typical shift, he oversaw thirty to thirty-eight other employees. (Defs.' SOF ¶ 6; Lacayo Dep. 42:8–16.) He also acknowledged "manag[ing] and direct[ing] staff in the effective execution of their duties and the assistance in solution of problems." (Defs.' SOF ¶ 10; Lacayo Dep. 67:12–17).

The Plaintiffs respond that, although the numbers may be correct, the other employees did not actually report to the duty managers. In support of their denial that there was any direct reporting to the duty managers, the Plaintiffs cite to various paragraphs in their statement of facts, spread across six different pages. But the Court need consider only material that is cited with particularity. Fed R. Civ. P. 56; *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"). Additionally, upon a cursory review, most of the cited-to information does not actually contradict the evidence that shows that the duty managers indeed directed the work of many of other employees. For example, the Plaintiffs attempt to refute the Defendants' claims by establishing that dispatchers made the job assignments and that the "directed" employees had already been trained and therefore did not require instruction. But these facts, even accepted as true, do not undermine the record evidence showing that the duty managers were also supervising the employees and directing their work.

With respect to Gamarra, even reading his evidence in the light most favorable to him, his testimony regarding the number of employees he directed does not raise a disputed issue of material fact. He stated that there were times, "more often than not," when he was supervising only one employee. (Gamarra Dep. 242:25–243:18.) He also specified that "on the night shift" he supervised one or two employees. In contrast, his immediate supervisor explained that "Gamarra regularly supervised at least 2 employees on the night shift and approximately 10 to 12 employees on day shifts." (Defs.' SOF ¶ 32; J. Cabrera Aff. ¶ 4, ECF No. 35-1, 2.) Moreover, Gamarra sent his supervisor a number of emails or reports indicating that there were regularly at least two employees under his direction. For example, in one report to his supervisor, Gamarra complains that he was "short staffed" because he "[h]ad only 1 employee," indicating that this was an unusual situation. (Ex. 11, Gamarra

Dep, ECF No. 42-1, 83–84.) In another shift report, Gamarra listed two employees as requiring overtime and listed another as a "THS agent." (Ex. 10, Gamarra Dep, ECF No. 42-1, 81–82.) Gamarra described this as "adequate staffing" during an "[o]verall [] noneventful night" shift, revealing, again, that at least three was a typical number of subordinate employees. (*Id.*) In an email from another date, Gamarra explained to a supervisor that, during his shift, he had to send an employee home because he was not complying with directions from a lead. (Ex. 14, Gamarra Dep, ECF No. 42-1, 87.) This too reinforces the other record evidence that Gamarra regularly directed at least two employees during his shifts. Without more, Gamarra's testimony that he frequently only worked with one employee is not enough to raise a genuine issue of material fact. Even assuming that Gamarra indeed frequently worked with only one employee, the evidence submitted by the Defendant, showing that Gamarra regularly and customarily directed the work of two or more employees, is undisputed. Gamarra's direction of at least two other employees during his shifts, even by his own testimony did not occur only on an "isolated or one-time" basis.

The Defendants have thus carried their burden of establishing this final element of the executive exception and the Plaintiffs have failed to come forward with sufficient evidence based upon which a reasonable juror could find in their favor.

### 3. The Court declines to address whether the Plaintiffs are exempt under the administrative exemption of the FLSA.

The Defendants also claim that the Plaintiffs all qualify for the administrative exemption as well. Because the Court finds that there is no genuine issue of material fact regarding whether the Plaintiffs qualify for the FLSA's executive exemption, it declines to opine on whether they also, or alternatively, satisfy the requirements under the administrative exemption.

### 4. Conclusion

In conclusion, "the pleadings, affidavits, depositions, admissions, and the like 'show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Urquilla-Diaz*, 780 F.3d at 1050 (quoting Fed. R. Civ. P. 56(a)). The Plaintiffs have failed to make a showing sufficient for a reasonable jury to find on their behalf on their FLSA claims. The Court therefore **grants** the Defendants' motion for final summary judgment (**ECF No. 46**).

The Clerk shall **close** this matter. Any other pending motions are **denied as moot**. Both the calendar call, set for April 11, 2017, and the trial date, April 17, 2017, are **canceled**.

**Done and ordered**, at Miami, Florida, on April 7, 2017.

_____
Robert N. Scola, Jr.
United States District Judge